IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIBEL COLON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE[1] | : | |
| Commissioner of Social Security | : | NO.  06-4971 |

## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO                                    SEPTEMBER 27, 2007
UNITED STATES MAGISTRATE JUDGE

Plaintiff, Maribel Colon, filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), for review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383(f).  Presently before the Court are Plaintiff's Motion for Summary Judgment or, In the Alternative, Plaintiff's Motion for Remand, and the Response of Defendant Commissioner to Plaintiff's Request for Review.  For the reasons that follow, plaintiff's motion should be granted insofar as plaintiff asks for a remand.

## 1.   PROCEDURAL HISTORY

Plaintiff filed an application for SSI on February 11, 2004 alleging disability as of June 12, 2002.  (R. 203-05.)  Her application was initially denied, (R. 188-92), and plaintiff thereafter requested an administrative hearing, (R. 194).  A hearing was held before an Administrative Law

---

[1]Michael J. Astrue became the Commissioner of Social Security effective Feb. 12, 2007.  See Miles v. Astrue, 2007 WL 764037, at n.1 (E.D. Pa. Mar. 9, 2007).  Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), he is "automatically substituted" for Jo Anne B. Barnhart as the defendant in this action.

Judge ("ALJ") on July 13, 2005.  (R. 27.)  At the hearing, plaintiff and a vocational expert

("VE") testified.  (R. 27.)

On August 8, 2005, the ALJ issued a decision denying plaintiff's claim for benefits.  (R.

181-87.)  On September 7, 2006, the Appeals Council denied plaintiff's request for review, (R.

11-13), and the ALJ's decision consequently stands as "the final decision of the Commissioner,"

(R. 11).  See Sims v. Apfel, 530 U.S. 103, 107 (2000).


## 2.   ALJ's Findings

The ALJ made the following findings in his decision dated August 8, 2005:

1. The claimant has not engaged in substantial gainful activity
   since the alleged onset of disability.

2. The claimant's obesity, herniated disc at L5-S1, right carpal
   tunnel syndrome (CTS), and depression/anxiety are considered
   "severe" based on the requirements in the Regulations 20 CFR
   § 416.920(c).

3. These medically determinable impairments do not meet or
   medically equal one of the listed impairments in Appendix 1,
   Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding her
   limitations are not totally credible for the reasons set forth in
   the body of the decision.

5. The claimant has the residual functional capacity to perform
   simple 1-2 step tasks involving no sitting restrictions and the
   following limitations: lift 2-3 pounds; stand/walk 4-5 hours;
   limited lower extremity pushing/pulling, and no exposure to
   dampness, height, and moving machinery.

6. The claimant is unable to perform any of her past relevant work
   (20 CFR § 416.965).

7. The claimant is a "younger individual" (20 CFR § 416.963).

8. The claimant has a high school education (20 CFR § 416.964).

9. The claimant has no transferable skills from any past relevant work (20 CFR § 416.968).

10. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, there are a significant number of jobs in the national economy that she could perform, examples of which are detailed in the body of this decision.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

(R. 186.)  Accordingly, the ALJ concluded that plaintiff was not eligible for SSI under the Act.

(R. 187.)

## 3.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited, and this Court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  See Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate."  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is more than a scintilla of evidence but may be less than a preponderance of the evidence.  Burns, 312 F.3d at 118.

"Substantial evidence can only be considered as supporting evidence in relation to all other evidence in the record."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)).  Therefore, despite the deference to administrative decisions in disability benefits cases, the Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not

supported by substantial evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)).  The ALJ must also comport with proper procedure and apply proper legal standards.  Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984).

### 4.   DISCUSSION

The Social Security Administration ("SSA") is authorized to pay SSI under the Act to persons who have a "disability."  See Barnhart v. Thomas, 540 U.S. 20, 21 (2003).  A disability is defined as "the inability to engage in any substantially gainful activity by reason of any medical impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Pursuant to the Act, the SSA has promulgated regulations ("the Regulations") establishing a five-step sequential evaluation process to determine whether a claimant is disabled.  See Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004); 20 C.F.R. § 416.920.

The first two steps constitute threshold determinations.  At step one, the SSA will find that a claimant is not disabled if she is engaging in "substantial gainful activity."  20 C.F.R. § 416.920(b).  If the claimant is not working at substantial gainful activity, then the SSA proceeds to step two and determines whether the claimant has a "severe impairment."  Id. § 416.920(c).  If a claimant is found to be severely impaired, the SSA proceeds to step three of the evaluation.  Id.

At step three, the SSA determines whether the impairment meets or equals an impairment identified in Appendix 1 to Subpart P of Part 404 of the regulations, see 20 C.F.R.

Pt. 404, Subpt. P, App. 1, known as the Listing of Impairments ("the Listings").  See 20 C.F.R. § 416.920(d).  If the claimant has an impairment which meets the durational requirement and meets or equals a listed impairment, the SSA will find the claimant disabled without considering her age, education, and work experience.  Id. § 416.920(d).

If the claimant does not have an impairment that meets or equals one of the Listings, the inquiry proceeds to step four, and the SSA assesses whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work.  Id. § 416.920(a)(4)(iv).  If the claimant can still perform her past relevant work, she will be found to be "not disabled."  Id. However, if the claimant is unable to perform her past relevant work, the SSA reaches step five and has the burden of demonstrating that the claimant "can make an adjustment to other work" that exists in significant numbers in the national economy, considering her RFC together with the vocational factors of age, education, and work experience.  Id. §§ 416.920(g), 416.960(c).  If the claimant cannot make an adjustment to other work, the SSA will find the claimant disabled at step five.  Id. § 416.920(g); see Thomas, 540 U.S. 20, 23-25 (2003); Ramirez, 372 F.3d at 551.

Here, the ALJ reached the fifth step of the sequential evaluation, finding that although plaintiff was "unable to perform any of her past relevant work," (R. 186, Finding No. 6), "there [were] a significant number of jobs in the national economy that she could perform," (R. 186, Finding No. 10).  In support of her present motion, plaintiff argues that the ALJ (1) improperly failed to classify several impairments as severe, (2) improperly failed to include all of plaintiff's limitations in her hypothetical questioning of the vocational expert, (3) improperly found plaintiff's subjective complaints to be not fully credible, and (4) failed to follow the

requirements of Social Security Ruling ("SSR") 00-4p regarding discrepancies between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

### (A)   Impairments Not Found To Be Severe

Plaintiff argues that the ALJ erred by failing to classify several of plaintiff's impairments as severe at step two of the five-step sequential evaluation mandated by the Regulations.  See Pl.'s Br. at 6-8.  Specifically, plaintiff directs this Court's attention to the following impairments, which she argues should have been classified as severe:  a prominent subcortical area of cystic change likely degenerative at the neck of the heel, and extending to the region of the sinus tarsi and subtalar joints, with degenerative changes at the talonavicular articulation; a right plantar calcaneal spur and bilateral calcific Achilles tendonitis; and a "somewhat" large hiatal hernia.  See id. at 7-8.

At step two of the evaluation, the ALJ is required to determine whether a claimant has a "severe medically determinable physical or mental impairment."  20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is defined as an "impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id. § 416.920(c).  On the other hand, "a non-severe impairment has 'no more than a minimal effect' on the individual's ability to perform basic work activities."  See Woodson v. Barnhart, 2004 WL 1102363, at *6 (E.D. Pa. May 11, 2004) (emphasis added).  If the ALJ finds that the claimant does not have a severe impairment, she is instructed to make a finding that the claimant is not disabled without considering the claimants age, education, and work experience. See id.  If the ALJ finds that the claimant does have a severe impairment, she is instructed to proceed to step three of the five-step sequential evaluation.  See id. § 416.920(a)(4).  Here,

plaintiff argues that, although the ALJ found some of plaintiff's impairments to be severe, she nonetheless committed reversible error by failing to characterize additional impairments as severe.  See Pl.'s Br. at 6-8.  Although plaintiff's argument mischaracterizes the nature of the step-two analysis, the ALJ erred by failing to discuss these ailments and explain her reasons for discounting them.

Plaintiff's argument mischaracterizes the nature of the step-two analysis by overstating its purpose.  The analysis at step two is merely a "threshold" determination.  See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004).  Its sole purpose is to "allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  See SSR 85-28, 1985 WL 56856, at *2; see also Bowen v. Yuckert, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring) (describing the second step as an opportunity to "weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability").  Therefore, the fact that the ALJ found at least some of plaintiff's impairments to be severe – thus satisfying step two – makes it unnecessary for this court to evaluate whether other impairments should have been characterized as severe.  See Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa., March 27, 2006) (because the ALJ made it past step 2, "the ALJ's finding that plaintiff's carpal tunnel syndrome is not a severe impairment had no effect on the ultimate determination of non-disability").

In addition, at step two, the ALJ is required to look at the combined effect of all of a claimant's impairments, not the individual effects of the separate impairments.  The Regulations state:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the

basis of eligibility under the law, **we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity**.

20 C.F.R. § 416.923 (emphasis added).  Social Security Ruling 85-28 reiterates this view of the step-two analysis.  It states, "Under 20 CFR, section[] . . . 416.923, when assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's ability to function, rather than assess separately the contribution of each impairment existed [sic] alone."  SSR 85-28, 1985 WL 56856, at *3.

In the instant case, the ALJ concluded that several of plaintiff's impairments are severe.  In her decision, she explains, "The medical evidence indicates that the claimant has obesity, herniated disc at L5-S1, right carpal tunnel syndrome ("CTS"), and depression/anxiety, impairments that are 'severe' within the meaning of the Regulations . . . ."  (R. 183-84.)[2]  Within the context of the step-two analysis, in which an ALJ is instructed to consider the combined effect of a claimant's impairments to make a threshold determination of disability, the ALJ's finding was sufficient to satisfy the second step of the evaluation.

Notwithstanding the above, an ALJ's failure to find one or more ailments to be severe could taint the rest of the ALJ's analysis.  See Kirk v. Comm'r of Soc. Sec., 177 Fed. Appx. 205, 207, n.2 (3d Cir. 2006).  An ALJ's finding that a particular ailment is not severe means that the ALJ has found that the ailment does **not "significantly limit**[ a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c) (emphasis added).  If an ALJ erroneously finds that one or more impairments are not severe, such a finding may have an

---

[2]It is unclear from the ALJ's decision whether she found each of the ailments listed to be severe on its own, or that the listed ailments, considered together, are severe.  Because it was only necessary that the ALJ determine the latter for purposes of step two, it is unnecessary for this Court to determine which meaning was intended.

improper effect on the ALJ's RFC assessment such that the assessment does not accurately reflect all of plaintiff's limitations supported by the record.[3]

The Third Circuit has "repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in **explicitly** weighing **all** evidence." Fargnoli, 247 F.3d at 42 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979)(emphasis added)); see Coleman v. Chater, 1997 WL 452192, at *3 (D. N.J. July 22, 1997). Furthermore, the Third Circuit has held that "unless the [Commissioner] has **analyzed** all evidence and has sufficiently **explained the weight [she] has given** to obviously probative exhibits, to say that [the Commissioner's] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Secretary of HEW, 567 F.2d 258, 259 (4th Cir. 1977)) (emphasis added); Coleman, 1997 WL 452192, at *3.

In this case, the ALJ failed to sufficiently discuss the impairments that plaintiff argues should have been found to be severe.[4] This omission makes it impossible for a reviewing court to determine whether those impairments were adequately considered by the ALJ in making her

---

[3]Although an ALJ must consider **all** medically determinable impairments, even those that are not found to be severe, see Rutherford v. Barnhart, 399 F.3d 546, 554 n.7 (3d Cir. 2005); 20 C.F.R. § 416.945(a)(2), a finding of non-severity means that the impairment has **"no more than a minimal effect"** on the individual's ability to perform basic work activities. See Woodson v. Barnhart, 2004 WL 1102363, at *6 (E.D. Pa. May 11, 2004) (quoting SSR 85-28) (emphasis added). Clearly, an erroneous finding that one or more ailments have only a minimal effect on basic work function may improperly taint an RFC assessment due to a failure to fully consider a claimant's actual limitations.

[4]In her decision, the ALJ mentions that plaintiff was treated for "abdominal pain, secondary to gastritis," and that "[a]n MRI of the left ankle . . . demonstrated degenerative joint disease along the anterior subtalar and talonavicular joints," (R. 183), but she failed to discuss either ailment any further.

RFC assessment. See Cotter, 642 F.2d at 705 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."). Although the ALJ did include certain limitations in her assessment of plaintiff's RFC, it is unclear whether she would have included additional limitations had she properly considered these impairments. Since the ALJ failed to properly "analyze[] all evidence and . . . sufficiently explain[] the weight [she] has given to obviously probative exhibits," it cannot be said that the Commissioner's decision is supported by substantial evidence, and a remand is warranted.[5] See Gober, 574 F.2d at 776 (quoting Arnold, 567 F.2d at 259) (emphasis added); Coleman, 1997 WL 452192, at *3.

### (B)   Limitations Included in the ALJ's Hypothetical Questions to the VE

Plaintiff argues that the ALJ erred by failing to include all of plaintiff's limitations in her hypothetical questioning of the VE. See Pl.'s Br. at 8-10. Specifically, plaintiff argues that the ALJ should have included limitations associated with her mental ability, a sit/stand option, and limitations with regard to the use of her right hand for manipulating and handling objects. Id.

An ALJ's hypothetical questions to the VE must reflect all of the claimant's impairments that are medically established and supported by the record. See Rutherford, 399 F.3d at 554.

---

[5]To the extent that defendant Commissioner's brief provides reasons not stated in the ALJ's decision in support of a finding that disability benefits were not warranted, see, e.g., Def.'s Br. at 19-21, the Court "cannot affirm the denial of benefits by substituting the grounds proposed by the . . . Defendant [Commissioner] for those of the ALJ." See Reynolds v. Apfel, 1999 WL 509742, at *7-8 (E.D. Pa. July 16, 1999); see also Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001); Fargnoli, 247 F.3d at 44 n.7 (quoting SEC v. Chenery Corp., 318 U.S. 80 (1943)) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). This principle applies equally to the analysis regarding each of plaintiff's claims.

Although the plaintiff frames this challenge as one attacking the hypothetical questions posed to the VE, it is better understood as one challenging the ALJ's assessment of plaintiff's RFC.  The Third Circuit in Rutherford emphasized the distinction between a true challenge to the hypothetical questions posed by the ALJ, and a challenge to the RFC.  See id. at 554 n.8.  The Court of Appeals described the former as one where "the ALJ fail[s] to **convey** limitations to the vocational expert that were properly identified in the RFC assessment."  Id. (emphasis added).  It describes the latter as one where "the ALJ fail[s] to **recognize** credibly established limitations during the **RFC assessment** and so [does] not convey those limitations to the vocational expert."  Id. (emphasis added).

The challenges made by plaintiff in the instant case are of the latter variety.  Each of the impairments that plaintiff argues should have been included in the hypothetical questions to the VE was considered by the ALJ during her assessment of plaintiff's RFC, and found, at least to a certain extent, to conflict with the evidence in the record.  Therefore, in reviewing plaintiff's claims regarding her RFC, the issue is whether the record contains substantial evidence to support the ALJ's findings.

Although the court is not to undertake *de novo* review or to re-weigh the evidence on the record, see Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986), an ALJ "cannot reject evidence for no reason or for the wrong reason," Cotter, 642 F.2d at 706.  Therefore, it is necessary for the court to review the reasons given by the ALJ and assess whether they can properly be found to support her conclusion.

Plaintiff first argues that the ALJ should have included limitations associated with the June 3, 2005 Assessment of Mental Ability submitted by Pan-American psychiatrist, Richard Mufson, M.D., and therapist, Jorge Balverdi.  See Pl.'s Br. at 8-9.  The assessment stated that

plaintiff had "moderate" limitations in categories such as dealing with peers and authority figures, maintaining personal appearance, and using judgment.  The assessment further indicated that plaintiff had "marked" limitations in categories such as maintaining attention, carrying out instructions, and behaving in an emotionally stable manner, and that plaintiff had "extreme" limitations in categories such as dealing with stress and functioning independently.

In assigning weight to this evidence, the ALJ was required to "consider the medical opinions in [the] record together with the rest of the relevant evidence [she] received."  20 C.F.R. § 416.927(b).  The ALJ found that, although plaintiff "presents moderate difficulties in maintaining concentration and focus, [she] should have no problem performing simple, routine tasks." (R. 184.)  The ALJ explained this finding by stating that the mental assessment "is not supported by the treatment records which show the claimant's depression/anxiety is stable with medication.  Treatment records make no mention of emotional lability, impaired memory/concentration, or inappropriate social interaction.  She is consistently described as alert, goal-oriented, reliable, and well-groomed."  (R. 183.)  In addition, the ALJ found that plaintiff's depression has not caused marked limitations in her daily living.  The ALJ stated that "[t]he claimant presents no limitations in her ability to interact appropriately.  She demonstrates no signs of isolation or withdrawal, and is able to relate well with family members and medical professionals."  (R. 184.)

The record supports the ALJ's findings.  For example, evidence in the record indicates that plaintiff has responded positively to therapy, (R. 680-729), and has learned to control angry feelings, (R. 404).  In addition, plaintiff's own self-assessment states that she "get[s] along with people," is able to respond to criticism "just fine," does not have trouble going out in public, belongs to at least one group or club, is able to organize her daily schedule, has no trouble

understanding instructions and carrying them out, and can make decisions on her own.  (R. 82-83.)  Because the ALJ was required to assess the mental evaluation in light of the entire record, and because the record supports her conclusion, including plaintiff's treatment records and her own self-assessment, the ALJ's decision is supported by substantial evidence and should be upheld.

Plaintiff next argues that the ALJ should have included a sit/stand option in her questioning of the VE.  See Pl.'s Br. at 9.  Her argument is based on a June 27, 2005 medical assessment prepared by plaintiff's treating physician, Melissa Nieves, M.D.  The medical assessment states that plaintiff is only able to sit for 30 minutes at a time, (R. 530), and "less than 2 hours" total during an 8-hour working day, (R. 531).  Dr. Nieves also stated in her assessment that plaintiff "need[s] to include periods of walking around during an 8-hour working day," and those periods must be 7-8 minutes long and take place every 45 minutes.  (R. 531.)

"Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a long period of time."  Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)) (internal quotation marks omitted).  In addition, a treating physician's opinion is entitled to controlling weight "[i]f [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record ."  20 C.F.R. § 416.927(d)(2).

If the ALJ finds that the opinion is not entitled to controlling weight, the Regulations dictate a number of factors for the ALJ to consider in determining how much weight it should be given.  See id. § 416.927(d) ("Unless we give a treating source's opinion controlling weight

under paragraph (d)(2) of this section, we consider all of the [factors listed in paragraph (d) of this section] in deciding the weight we give to any medical opinion."). Although the ALJ "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided," see Plummer, 186 F.3d at 429, "an ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence," id.

In the instant case, the ALJ acknowledged Dr. Nieves' medical assessment, but found that it did not warrant controlling weight because "it is not supported by [Dr. Nieves'] own treatment records or by other objective medical evidence of record." (R. 184.) Specifically, despite finding that plaintiff suffered with a herniated disc at L5-S1," (R. 186, Finding No. 2), the ALJ found the following discrepancies: "[Dr. Nieves'] progress notes make no mention of gait dysfunction, abnormal reflexes, motor/sensory/reflex abnormalities, or other neurological abnormalities. The condition has only warranted conservative treatment, and is limited to narcotic medication, which apparently relieves her pain." (R. 184-85.) For the following reasons, the explanation given by the ALJ is insufficient to allow for meaningful judicial review of the ALJ's decision to reject a sit/stand option.

The ALJ's first cited "contradiction" with regard to Dr. Nieves' medical opinion, is that the record contains "no mention of gait dysfunction, abnormal reflexes, motor/sensory/reflex abnormalities, or other neurological abnormalities." (R. 184-85.) Dr. Nieves' assessment states that plaintiff has "severe lower back pain radiating to lower extremities" that is "constant" and "chronic." (R. 529.) The assessment further states that plaintiff's pain limits her ability, *inter alia*, to stand for more than 15 minutes at a time, to sit and stand/walk for less than two hours per working day, and requires her to be able to shift positions at will. The fact that Dr. Nieves may

not specifically state in her assessment that plaintiff has gait dysfunction or other neurological abnormalities is not necessarily inconsistent with the findings Dr. Nieves does make.

It is well-established in this Circuit that "[p]ain itself may constitute a disabling impairment." See Chrupcala v. Heckler, 829 F.2d 1269, 1276 n.10 (3d Cir. 1987); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985); Smith, 637 F.2d at 972.  In Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993), the Court held that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Id. at 1067; see also Jesurum, 48 F.3d at 118-19.  The Court further clarified that while there must be objective evidence of a condition that could cause pain, there need not be objective evidence of the pain itself.  See Mason, 994 F.2d at 1067.  Of course, the ALJ must still determine whether any claims of subjective pain "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 416.929.  However, in this case, the fact that plaintiff's treating doctor failed to specifically mention "gait dysfunction, abnormal reflexes, motor/sensory/reflex abnormalities, or other neurological abnormalities," is not necessarily inconsistent with regard to her conclusions regarding plaintiff's back pain or a need for a sit/stand option.

As for the ALJ's contention that the plaintiff's condition has "only warranted conservative treatment, [which] is limited to narcotic medication," (R. 185), such a statement indicates that the ALJ may have misunderstood the nature of plaintiff's degenerative disc disease.  See Glomski v. Massanari, 172 F. Supp. 2d 1079, 1085 (E.D. Wis. 2001) ("[the ALJ's] discussion of non-operability and conservative therapies may indicate a misunderstanding of degenerative disc disease").  Indeed, it has been found that degenerative disc disease "is

generally treated with conservative therapy and only results in an operation in 2% of its sufferers." Id. (citing Scientific American at 53 (Aug. 1999)).

Even if the ALJ was correct regarding the appropriate treatment for plaintiff's ailment, at the very least, the ALJ has failed to adequately support such medical conclusions by citing to the opinions of medical experts. An ALJ is not allowed to substitute the opinions of medical experts with her own medical judgment. See Morales, 225 F.3d at 317 (finding that an ALJ may not reject a treating physician's opinion based on "speculative inferences from medical reports," or the ALJ's own "credibility judgments, speculation or lay opinion"); Wallace v. Secretary of HHS, 722 F.2d 1150, 1155 (3d Cir. 1983) ("[A]n ALJ is not free to set his own expertise against that of physicians who present competent medical evidence.") (quoting Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983)) (internal quotation marks omitted). In deciding this issue, the ALJ did not point to any evidence provided by a medical expert that supports the medical conclusions she reached regarding appropriate treatment for disabling degenerative disc disease.

With regard to the ALJ's final reason for rejecting the sit/stand option, namely, that the narcotic medications prescribed to plaintiff "apparently relieve[] her pain," (R. 185), it is unclear what basis there is in the record for such a claim. Although Dr. Nieves' notes state that plaintiff's degenerative disc disease is "stable," (R. 375, 546), this statement does not necessarily support the ALJ's finding that narcotic medications **relieve** plaintiff's pain, and the ALJ provided inadequate reasons for not including a sit/stand option. Therefore, the case should be remanded for further consideration in that regard.

Finally, plaintiff argues that the ALJ should have included limitations on plaintiff's use of her right hand for manipulating and handling objects. See Pl.'s Br. at 9-10. Her argument is based on a report written by Apollo M. Arenas, M.D., which found symptoms "suggestive of a

moderately severe right median nerve entrapment neuropathy (carpal tunnel syndrome)," (R. 274-75), and a report by Oung Thain, M.D., noting a bilateral reduction in grip strength to about 70% of normal, (R. 448).

In weighing this medical evidence, the ALJ was required to consider it "together with the rest of the relevant evidence [she] received." 20 C.F.R. § 416.927(b). The ALJ considered the evidence in the record that suggests plaintiff suffers from carpal tunnel syndrome and found that, although the evidence shows plaintiff was "diagnosed with right CTS in June 2003, . . . the condition has not affected her ability to perform fine or gross dexterous activities." (R. 184.) This finding is supported by substantial evidence in the record.

Although plaintiff relies on Dr. Thain's report in arguing that her carpal tunnel syndrome has limited her ability to manipulate and handle objects, the very same report says that plaintiff has no limitations with reaching, handling, or fingering, (R. 451), and that she is "able to perform fine and dexterous movements," (R. 448). In addition, plaintiff stated in her self-assessment that she is able to use a knife and fork and fasten buttons on clothing. (R. 258.)

The ALJ was required to assess the evidence that supports plaintiff's claim of limitations caused by carpal tunnel syndrome in light of the entire record. Since the record supports her conclusion, the ALJ's findings are supported by substantial evidence and should be upheld in that regard.

### (C) Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ did not give sufficient weight to plaintiff's subjective statements concerning her impairments and their effect on her ability to work. See Pl.'s Br. at 10-12. In order for an ALJ to determine the credibility of subjective complaints, the ALJ must

decide the extent to which a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence.  See 20 C.F.R. § 416.929(a).  This determination is made using a two-prong analysis.  See id. § 416.929.

First, the ALJ must decide whether there is an underlying medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  See id. § 416.929(c)(1).  In order to make such a determination, there must be medical signs or laboratory findings which show that such a condition exists.  See id. § 416.929(a).  However, "while there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself."  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).

Second, if an underlying condition is identified, the ALJ must then decide to what extent the claimant's symptoms actually limit her capacity for work.  See 20 C.F.R. § 416.929(c)(1).  This determination is made in light of all of the evidence of record.  Id.  The credibility finding made by the ALJ is generally entitled to great deference.  See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

In the instant case, the ALJ recognized that the record contained evidence of "moderate to severe degenerative disc disease at L5-S1 with a left paracentral [herniated nucleus pulposus] associated with mild to moderate canal stenosis."  (R. 182.)  Based on this determination, the ALJ included some limitations caused by plaintiff's pain in her RFC assessment, i.e., finding that plaintiff is not able to lift more than 2-3 pounds, or to stand or walk for more than 4-5 hours.  (R. 185.)  Although the ALJ found that the record demonstrated the existence of an underlying condition that caused certain limitations in plaintiff's RFC, she found that "[t]he claimant's subjective complaints suggest a greater level of severity than is shown by, or could reasonably

be expected from the medical evidence," (R. 184).  The ALJ found that plaintiff's claim that pain

causes additional restrictions, such as sitting limitations, (R. 80, 83), or the inability to

concentrate, (R. 84), were inconsistent with the record.  (R. 185.)  The ALJ stated that plaintiff's

"treatment records do not show any evidence that her back condition has resulted in any

disabling clinical findings."  (R. 184.)  Additionally, the ALJ found that plaintiff "has never had

any physical therapy and treatment has been wholly conservative."  (R. 184.)

        As for the ALJ's assertion that the record does not contain evidence of "disabling clinical

findings," (R. 184), it is noted that elsewhere in her decision the ALJ acknowledged that an MRI

revealed "moderate to severe degenerative disc disease at L5-S1 with a left paracentral

[herniated nucleus pulposus] associated with mild to moderate canal stenosis," (R. 182).  Thus,

plaintiff satisfied the first prong of the analysis by providing objective evidence of degenerative

disc disease.  (R. 182, 526-27.)  The ALJ accepted the medical evidence supporting the existence

of degenerative disc disease, (R. 182), and therefore factored some limitations caused by

plaintiff's back pain into her RFC.  (R. 185).  Since plaintiff satisfied the first prong of the

analysis, the ALJ was required to point to substantial evidence in the record that contradicted

plaintiff's contentions regarding the extent of her pain.  See 20 C.F.R. § 416.929(c)(1).  As

explained above, while there must be objective evidence of a condition that could cause pain,

there need not be objective evidence of the pain itself.  See Mason, 994 F.2d at 1067.

        In support of her finding that plaintiff's claims of subjective pain were not fully credible,

the ALJ also asserted that plaintiff's treatment has been "wholly conservative."  With regard to

that explanation, the ALJ has not adequately explained what medical evidence she relied on in

order to determine that plaintiff's treatment records contradicted her testimony regarding the

level of pain caused by her degenerative disc disease, see supra, section (B).  Since the ALJ has

not provided a reason to reject plaintiff's subjective complaints of back pain that is both (1) consistent with the Regulations and case law, and (2) supported by substantial evidence in the record, the case should be remanded for further consideration of plaintiff's subjective back pain.

As for plaintiff's subjective complaints regarding limitations caused by carpal tunnel syndrome, the ALJ found that there was medical evidence to support the existence of the underlying condition, but that "the condition does not affect her ability to perform fine or gross dexterous activities." (R. 184.)  Because this finding was made in light of all of the evidence in the record and because it is supported by substantial evidence, see *supra*, section (B), it should be upheld.

Finally, with regard to plaintiff's depression and anxiety, the ALJ found that it neither "interfere[s] with her ability to take care of personal needs or those of her 13-year old, maintain a household, keep doctor appointments, shop, watch television, and maintain good grooming." (R. 184.)  As explained above, see *supra* section (B), the ALJ properly found that treatment records reflect, among other things, that plaintiff's depression and anxiety were stable with medication and make no mention of emotional lability, impaired memory and concentration, or inappropriate social interaction, (R. 183).  As also explained *supra*, the record supports the ALJ's finding that plaintiff presented no limitations in her ability to interact appropriately, and she "demonstrate[d] no signs of isolation or withdrawal, and [was] able to relate well with family members and medical professionals." (R. 184.)  Since the ALJ's findings were made in light of all of the evidence in the record, including medical records and plaintiff's own self-assessment, see *supra*, section (B), they are entitled to deference by this Court and should be upheld.

**(D)     Discrepancies Between the VE's Testimony and the DOT**

Plaintiff argues that the ALJ failed to abide by SSR 00-4p when she failed to ask the VE about any conflict between the VE's testimony and information contained in the DOT, and to obtain a reasonable explanation for any apparent conflict.  See Pl.'s Br. at 4-6.  Although SSR 00-4p is inapplicable to this case based on the Third Circuit's interpretation of SSR 00-4p in Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005), because there were unexplained discrepancies between the VE's testimony and the DOT this case should be remanded so that the ALJ may inquire about the discrepancies.

"SSR 00-4p – by its literal terms – applies to only one limited portion of the vocational expert's testimony," namely, when the VE provides evidence about the requirements of a job or occupation.  See Rutherford, 399 F.3d at 557.  The portion of the VE's testimony that is covered by SSR 00-4p is to be distinguished from when the VE merely provides testimony that identifies jobs listed in the DOT.  Id.; see also Jackson v. Barnhart, 120 Fed. Appx. 904, 906 (3d Cir. 2005) ("[T]he VE did not describe the requirements of the jobs he believed Ms. Jackson could perform despite her impairments.  As such, the ALJ was not required to ask the VE about whether this portion of the VE's testimony conflicted with the DOT.") (citation omitted).

In the instant case, the VE's testimony that is being challenged by the plaintiff falls into the category of testimony that is not affected by SSR 00-4p.  At the hearing, the ALJ specified a number of hypothetical limitations based on the ALJ's ultimate RFC determination, and then asked the VE, "Are there other jobs that could be performed with these limitations?" (R. 38.)  The VE's testimony in response to this question consisted of restating the limitations given by the ALJ, and then saying, "And, let's see, a surveillance monitor is, the DOT number is . . . 379367-010.  There are about 155,000 nationally and about 2000 regionally." (R. 38-39.)

Although the VE's testimony provides evidence that the job of surveillance monitor is consistent with plaintiff's RFC, it does not describe the requirements of the job, and therefore does not "provide[ ] evidence about the requirements of a job or occupation" as such evidence is defined by the Third Circuit in Rutherford.  See Rutherford, 399 F.3d at 557.  Therefore, his testimony about the surveillance monitor occupation does not fit within the Third Circuit's limited view of when SSR 00-4p is applicable.

Even though SSR 00-4p is inapplicable to the instant situation, SSR 00-4p is not exhaustive of the ALJ's responsibilities with regard to developing a record and assessing discrepancies between the VE's testimony and the DOT.  Id.  The Court in Rutherford found that case law prior to the promulgation of SSR 00-4p is still applicable in situations where there are "inconsistencies between vocational expert testimony and DOT information . . . even when they do not come within the literal obligation imposed by SSR 00-4p."  Id.

At the hearing, the ALJ posed the following hypothetical to the VE:

> [A]n individual of this claimant's age, education, and past work history.  I'd like you to further assume the individual's capable of performing work that entails lifting and carrying two to three pounds.  Standing and walking four to five hours.  No limit sitting.  And reduced ability for lower extremity pushing and pulling.  And jobs that do not expose the individual to heights, hazards, machinery, or damp conditions.

(R. 38.)  In response to this hypothetical, the VE first stated that such an individual could not return to plaintiff's previous employment.  (R. 38.)  When asked if there were other jobs that could be performed with these limitations, the VE stated, "[I]t would include something like a surveillance system monitor . . . .  [R]eally more than that generally exceed [sic] the lifting restriction of two to three pounds, the other sedentary jobs."  (R. 38-39.)  In the middle of the above description of the requirements of a surveillance monitor, the ALJ interjected, "I'm sorry,

did I also say a simple routine, one to two tasks?" to which the VE responded, "No, you didn't, did not [sic] but I didn't think her skills were transferable," before concluding his description.

Plaintiff argues that the VE's testimony contradicts the DOT because the DOT's listing for surveillance monitor states that this occupation has a General Educational Development ("GED") level for reasoning ability of three.  DOT 379.367-010.  A GED of three for reasoning ability means that the claimant is able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[, and deal] with problems involving several concrete variables in or from standardized situations."  DOT App. C.  In contrast, a GED of one for reasoning ability means that the claimant is able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions[, and deal] with standardized situations with occasional or no variables in or from these situations encountered on the job."  Id.[6]  In response, defendant Commissioner argues that this Court should ignore the GED levels indicated by the DOT and, instead, should focus its attention entirely on the Specific Vocational Preparation ("SVP") level assigned to an occupation by the DOT.  See Def.'s Br. at 7-12.

Although both SVP and GED deal with the intellectual requirements of a particular occupation, they each apply to distinct intellectual requirements of that occupation.  "The DOT's explanation of SVP suggests that SVP relates to the vocational preparation required to perform a job and does not address whether a job entails simple tasks, while the [GED], particularly the GED reasoning level, pertains to the complexity of a job."  Estrada v. Barnhart, 417 F. Supp. 2d 1299, 1302 n.3 (M.D. Fla. 2006); see Cooper v. Barnhart, 2004 WL 2381515, at *4 (N.D. Okla.

---

[6]A GED of two for reasoning ability means that a claimant is able to "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions[, and d]eal with problems involving a few concrete variables in or from standardized situations."  DOT Appendix C.

Oct. 15, 2004) (finding that a limitation to simple tasks appears more relevant to a job's GED reasoning level, than to its SVP level, which focuses on vocational preparedness); Hall-Grover v. Barnhart, 2004 WL 1529283, at *4 (D. Me. Apr. 30, 2004) (SVP ratings address the issue of vocational preparation necessary to perform a job while GED ratings address the issue of a job's simplicity); see also Carter v. Barnhart, 2005 WL 3263936, at *2 (D. Me. Nov. 30, 2005) ("The need to determine whether a claimant has transferable skills . . . has nothing to do with the mental demands of the tasks performed or to be performed by that individual.").

In the instant case, the ALJ's instruction that any occupations proposed by the VE require no more than a "simple routine" of "one to two tasks" dealt with the complexity of the proposed occupations, not the preparation required to perform those tasks. As such, this restriction must be consistent with the GED reasoning requirements of any proposed occupation, not the SVP of that occupation. Although it is, of course, necessary that any proposed occupation's SVP be consistent with all restrictions related to preparedness, such a finding certainly does not obviate the need for that occupation's GED to be consistent with all complexity restrictions.

Defendant Commissioner argues that SSR 00-4p does not deal with reasoning development levels, but instead only applies to conflicts with regard to "certain occupational information, such as exertional and skill levels, and transferability of skills issues." Def.'s Br. at 6. As discussed above, the Third Circuit has found that SSR 00-4p does not apply to the type of testimony at issue here, so it is unnecessary to strictly interpret the language of the ruling to decide this issue. However, even if the ruling did apply to this situation, SSR 00-4p clearly states that the issues discussed in the ruling are "example[s]" of conflicts, and are not exhaustive of all possible conflicts. See SSR 00-4p, 2000 WL 1898704, at *3.

Defendant also argues that the GED level of three assigned to the occupation of security monitor is inconsistent with a finding that it is unskilled work, and therefore "SSA adjudicators are prohibited by SSR 00-4p from relying on this GED reasoning development level evidence." Def.'s Br. at 10.  Because of the complexity of this argument, I will summarize it below before addressing its merits.

The Regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . .  [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment is needed."  20 C.F.R. § 416.968(a).  Several of the SSA's policy interpretation rulings elaborate on the requirements of unskilled work.  SSR 82-41 states, "Unskilled occupations are the least complex types of work.  Jobs are unskilled when persons can usually learn to do them in 30 days or less."  SSR 82-41, 1982 WL 31389, at *2.  SSR 85-15 states, "[T]he basic mental demands of competitive, remunerative, unskilled work include the abilities . . . to understand, carry out, and remember simple instructions . . . ."  SSR 85-15, 1985 WL 56857, at *4.

SSR 00-4p takes the language used by the Regulations to define each skill level and associates that language with the corresponding SVP level(s), as those levels are defined by the DOT.  The ruling states, "Using the skill level definition[] in [20 C.F.R. § 416.968], unskilled work corresponds to an SVP of 1-2."  SSR 00-4p, 2000 WL 1898704, at *3.  Defendant argues that this language means that **all** occupations with an SVP of one or two satisfy the Regulations' definition of unskilled work.  See Def.'s Brief at 10.  This argument is unconvincing.

First, the language of SSR 00-4p states that unskilled work "corresponds" with SVP levels of one or two.  Nowhere in the decision does it say that SVP levels are the sole factor used to determine skill level.  Clearly, an SVP level can only affect the skill level of an occupation to

the extent that it is relevant to any part of the definition of skill levels.  Because SVP deals with "the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job situation," see DOT App. C, it is only relevant to the portion of the definition of unskilled work that says unskilled work "can be learned on the job in a short period of time."  See 20 C.F.R. § 416.968(a).  The first part of the definition of unskilled work, which states that it "is work which needs little or no judgment to do simple duties," id., is entirely unrelated to the information conveyed by the SVP level.  As such, the SVP level cannot be used to satisfy that portion of the definition of unskilled work.

To make this even clearer by way of a related example, the Regulations state that sedentary work "involves lifting no more than 10 pounds at a time . . . .  [A] certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).  In contrast, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing . . . ."  Id. § 416.967(b).  While it would be accurate to say that lifting no more than 10 pounds at a time "corresponds" with sedentary work, it does not follow from this statement that **all** jobs that can be described in this manner are characterized as sedentary.  The Regulations make this explicit when they say that a job can fall within the sedentary range with regard to lifting, but still be characterized as light work because of its walking or standing requirements.  See id. Because it is not inconsistent for a job's SVP to correspond with unskilled work while its GED

imposes some restrictions, it would be improper for this Court to ignore the GED of any occupation identified by the VE.

Having found that the restriction imposed by the ALJ refers to the GED requirements of proposed occupations, and that the GED level of that occupation may not be ignored, it is necessary to determine whether the relevant restriction conflicts with a GED reasoning level of three.  The language used by the ALJ – that any occupation requires no more than "a simple routine, one or two tasks" – does not precisely correspond with the language of any particular GED reasoning level.  Plaintiff argues that, by limiting the plaintiff to jobs that require no more than **one to two tasks**, the ALJ restricted the scope of potential jobs to those with a GED reasoning level of one, which requires only that an employee "apply commonsense understanding to carry out **simple one- or two-step instructions**."  See Pl.'s Br. at 4-5 (emphasis added); see also DOT App. C.  At oral argument, defendant Commissioner argued that a GED level of three is consistent with the language used by the ALJ, see Oral Argument Tr. 8/3/07, at 14-18, and the Court would have to find that to be the case in order to avoid remanding on this issue.

Other courts that have addressed this issue have found that similar limitations **are inconsistent with a reasoning level of three**.  See Hackett v. Barnhart 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that claimant's RFC limiting her to "simple and routine tasks" was inconsistent with the demands of level-three reasoning); Carter, 2005 WL 3263936, at *2 (finding that claimant's RFC limiting her to "simple repetitive tasks" was inconsistent with the demands of level-three reasoning).  However, such limitations may be consistent with a reasoning level of two.  See Money v. Barnhart, 91 Fed. Appx. 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [claimant's] work be

simple, routine and repetitive."); see also Hackett, 395 F.3d at 1176 (10th Cir. 2005) (stating that claimant's RFC limiting her to "simple and routine tasks" appeared to be consistent with level-two reasoning).  The reasoning in support of a finding that a GED level of three is inconsistent with restrictions similar to those included in the hypothetical questioning of the VE in this case is persuasive.  See, e.g., Hackett, 395 F.3d at 1176; Carter, 2005 WL 3263936, at *2.  Since the VE in this case testified about only one occupation that an individual such as plaintiff was capable of performing, and because that occupation has a GED level of three, it is unnecessary for me to decide whether the relevant restriction would be consistent with a GED level of two. In that there are unexplained discrepancies between the VE's testimony and the DOT regarding the GED of the only occupation that the VE testified plaintiff was capable of performing, the case should be remanded so that the ALJ may inquire about the discrepancies.

### 5.  CONCLUSION

A district court, after reviewing the decision of the Commissioner, may under 42 U.S.C. § 405(g), "enter . . . judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001).  In the present case, the ALJ failed to properly and "explicitly weigh[] all [the] evidence," see Fargnoli, 247 F.3d at 42 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979)).

Since it is the function of the ALJ, not the courts, to evaluate the evidence, see Fargnoli, 247 F.2d at 42, a remand is appropriate to give the ALJ a further opportunity to properly analyze all the evidence of record and to take any necessary additional evidence.  See Cotter, 642 F.2d at 707; see also Walton v. Halter, 243 F.3d 703, 709 (3d Cir. 2001).  Accordingly, plaintiffs motion

should be granted insofar as plaintiff requests a remand, and the case should be remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.  Upon remand, the ALJ must discuss all ailments supported by the record, adequately explain her reason for finding that plaintiff has no sitting limitations, and inquire into any inconsistencies between the VE's testimony and the DOT.  Since the remand would be pursuant to 42 U.S.C. § 405(g), the final decision of the Commissioner denying benefits to plaintiff should be reversed with a remand, and a judgment to that effect should be formally set forth "on a separate document," pursuant to Federal Rule of Civil Procedure 58.  See Kadelski v. Sullivan, 30 F.3d 399, 402 (3d Cir. 1994); see also Shalala v. Schaefer, 509 U.S. 292, 302 (1993).

My Recommendation follows.

# R E C O M M E N D A T I O N

**AND NOW,** this 27th day of  September, 2007, upon consideration of Plaintiff's Motion for Summary Judgment or, In the Alternative, Plaintiff's Motion for Remand, and the Response of Defendant Commissioner to Plaintiff's Request for Review, for the reasons given in the accompanying Report, **IT IS HEREBY RECOMMENDED** that plaintiff's motion be **GRANTED** insofar as plaintiff requests a remand, and that the case be **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.  A Judgment **REVERSING** the Commissioner's final decision with a **REMAND** should therefore be entered.


  /s/ L. Felipe Restrepo
_____
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE